<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ANTONIO LORENZO-NODA, | : | |
| | : | |
| | : | **Civil Action No. 18-13414-AME** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CARL KAZAK, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ESPINOSA**, Magistrate Judge

This matter is before the Court on defendants' motion for summary judgment. Plaintiff, appearing pro se, opposes the motion and cross-moves for summary judgment. The Court has reviewed the parties' written submissions and decides the motions without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons that follow, both the motion and cross-motion for summary judgment are denied.

## I. BACKGROUND

This negligence action arises out of a motor vehicle accident involving a dump truck operated by plaintiff Antonio Lorenzo-Noda ("Plaintiff") and a tractor trailer operated by defendant Carl Kazak ("Kazak") and owned by defendant Armellini Express Lines, Inc. (collectively "Defendants"). The accident occurred on May 3, 2017, at approximately 1:24 p.m., on the southbound New Jersey Turnpike portion of Interstate 95 (the "Turnpike"), in or about the vicinity of the Turnpike's junction with Interchange 9. The two vehicles collided when the front of Defendants' tractor trailer struck the rear driver's side of Plaintiff's dump truck. These basic

facts concerning the accident appear to be undisputed. However, Plaintiff and Defendants disagree on many other details, asserting substantially differing versions of how the accident occurred.

According to Defendants, Kazak was operating his tractor trailer in the Turnpike's right lane of travel. At about the junction of the Turnpike and Interchange 9, Kazak observed a dump truck proceeding along the adjacent merge lane, located to the right of the Turnpike's mainline roadway. When he first saw the dump truck, Kazak estimates it was about a quarter mile ahead of him. Kazak maintains that at the time, his vehicle was traveling at a speed of 63 miles per hour, while the dump truck was traveling much slower, perhaps 30 miles per hour according to Kazak's best estimate. Kazak contends he took his foot off the accelerator, dropping his speed to give himself an opportunity to decide what maneuver to take and to give the dump truck room to enter the roadway.

Kazak explained at his deposition that he did not apply the brake because he did not observe the dump truck activate a turn signal and thus had no reason to believe he was going to come into the right lane. He testified that had he seen the turn signal, he would have applied the brake to slow down his tractor trailer. Kazak further testified that, seeing the dump truck in the merge lane to his right, he checked to the left, to determine if he could perform a lane change and give the dump truck room to enter the roadway. According to Kazak, he continued to check his mirror for a lane change opportunity, but by that time, Plaintiff's dump truck had entered the right lane. Kazak stated his tractor trailer was unable to avoid Plaintiff's slower moving vehicle, and thus, just as the dump truck merged into the right lane, the front right side of Defendants' tractor trailer struck the rear left side of the dump truck driven by Plaintiff. After the collision,

2

Kazak applied the brakes and turned his steering wheel to the right, aware that there were other vehicles in the lane to his left. The tractor trailer came to rest on an embankment to the right of the road, without jackknifing or rolling over. Kazak then exited the vehicle, apparently without injury.

Plaintiff offers a materially different version of the events leading to the collision. He asserts that the collision did not occur as he was in the process of merging onto the Turnpike. Rather, he maintains he had already entered the roadway and was traveling in the right lane when Defendants' tractor trailer hit his dump truck from behind. Plaintiff states that, on the day of the accident, he was driving the dump truck for his employer H&O Trucking, with which he had then been employed for approximately eight months. Plaintiff asserts he was traveling a familiar route, having driven it several times per week in the course of his employment. He had been traveling on Route 18 and exited in East Brunswick to connect with the southbound Turnpike at Interchange 9.

Plaintiff claims that just prior to the accident, he had been proceeding in the Turnpike merge lane, which he describes as a lengthy strip of road, running parallel to the right lane of travel on the Turnpike for approximately a quarter of a mile. Contrary to Defendant's claim, Plaintiff asserts that he activated his turn signal to indicate he intended to enter the right lane of travel from the merge lane. Plaintiff claims he had an unobstructed view of the right lane and saw no vehicles approaching in that lane for at least a quarter of a mile at the time of the merge. Based on these observations, Plaintiff states he entered the right lane of travel safely, at approximately mile marker 83.1, driving at a speed of 30 miles per hour and then accelerating to 47 miles per hour a tenth of a mile later, at mile marker 83.0. Plaintiff asserts he traveled along

the Turnpike's right lane, continuing to accelerate for another 145 yards or so. It was at this

point, Plaintiff maintains, that Defendants' tractor trailer struck his dump truck, just before mile

marker 82.9. Plaintiff asserts the collision occurred during a lane change maneuver by Kazak. He

avers:

> Defendant Carl Kazak turned the wheel to the right before impact to
> change lanes in an imprudent manner, in an attempt to pass the truck in
> front of him on the right. Once committed to the maneuver, he
> encountered Plaintiff's truck, which was traveling on the right lane at a
> speed of approximately 50 MPH. Defendant's entire front plowed into
> Plaintiffs [sic] left rear corner and left rear tires diagonally.

(Pl. St. of Undisputed Material Facts, ¶ 14.)

It is undisputed that, following the collision, a New Jersey State Trooper responded to the

scene of the accident. The Trooper spoke with both drivers, although Plaintiff's ability to

communicate with the Trooper was impeded by a language barrier.[1] The crash investigation

report prepared by the Trooper concluded that the accident occurred due to Plaintiff's failure to

yield to Defendants' tractor trailer as the dump truck attempted to merge into the mainline of the

Turnpike from the Interchange 9 onramp. The report further concluded Defendants' tractor

trailer was therefore unable to avoid Plaintiff's dump truck. Plaintiff was issued a citation for

violating N.J.S.A. 39:4-97.1, for driving at "such slow speed as to impede or block the normal

and reasonable movement of traffic…." The charge was later dismissed by the Township of East

Brunswick Municipal Court.

---

[1] Plaintiff states that he does not speak or understand English, a fact Defendants do not contest. Indeed, Kazak testified at his deposition that he was unable to communicate with Plaintiff following the accident because of the language barrier between them. Plaintiff acknowledges that a co-worker who was traveling the same route in a separate vehicle, a few minutes behind Plaintiff, stopped after the accident and tried to help Plaintiff communicate with the Trooper. However, Plaintiff denies that he told the co-worker or Trooper that the accident occurred while he was merging onto the Turnpike and maintains that it happened after he had safely merged onto the roadway and traveled over 320 yards.

Plaintiff filed this lawsuit on or about August 6, 2018, in the Superior Court of New Jersey, Union County. The Complaint asserts only one cause of action, alleging Plaintiff sustained severe personal injuries in the May 3, 2017 motor vehicle accident because of Defendants' negligence. On August 30, 2018, Defendants removed the action to this Court, pleading diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Thereafter, Defendants filed an Answer, together with a Counterclaim and Third-Party Complaint, to recover for the property damage to Defendants' tractor trailer. The Counterclaim and Third-Party Complaint, which named Plaintiff's employer H&O Trucking as a third-party defendant, were thereafter voluntarily dismissed on March 13, 2019.

Plaintiff, however, continued to prosecute his negligence claim, both with and without legal counsel. His initial attorneys withdrew their appearance, with leave of Court, on December 19, 2019. Plaintiff appeared pro se until July 14, 2020, when new counsel entered an appearance on his behalf. Plaintiff's second attorney sought to be relieved as counsel on October 16, 2020, and the motion was granted. Plaintiff has proceeded pro se since November 18, 2020.

The parties consented to this Court's authority to conduct all proceedings, including trial, pursuant to 28 U.S.C. § 636(c). This case was accordingly referred by the Honorable John M. Vazquez, U.S.D.J., by order entered May 27, 2021. Defendants thereafter filed their motion for summary judgment on June 30, 2021, and Plaintiff opposed and cross-moved for summary judgment on July 29, 2021.[2]

---

[2] Defendants argue that Plaintiff's cross-motion must fail because he did not obtain leave of Court to file it. However, because the Court denies the motion on the merits, it need not address Defendants' procedural argument.

## II.   DISCUSSION

### A.   Legal Standard

Federal Rule of Civil Procedure 56 sets the governing standard applicable to the parties' cross-motions for summary judgment. Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). It is well-established that a factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant and material if, under the substantive law, the dispute would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Satisfying the Rule 56(a) standard depends on whether the party moving for summary judgment on a claim bears the burden of proof. The Supreme Court has held that "with respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. In contrast, when the burden of proof falls on the moving party, "that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)).

Once the moving party has satisfied its initial burden, Rule 56 places the onus on the nonmoving party to establish the existence of a genuine issue as to a material fact. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). In other words, to defeat the motion for summary judgment, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. *Anderson*, 477 U.S. at 248; *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001), *overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs*, 134 S. Ct. 773 (2014); *see also Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment"). The Court, however, must view the evidence "in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Moreover, in evaluating a motion for summary judgment, the Court may not make credibility determinations or engage in any weighing of the evidence. *Anderson*, 477 U.S. at 255; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

**B.**     **Analysis**

This case involves a single claim under New Jersey's common law theory of negligence. To prevail on a claim of negligence under New Jersey law, a plaintiff must establish: "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." *Fernandes v. DAR Development Corp.*, 222 N.J. 390, 403-04 (2015). The burden is on the plaintiff to prove that the defendant acted negligently, that is, "without taking reasonable precautions to prevent the occurrence of foreseeable harm to

7

others," *id.* at 404, and that such negligence was the proximate cause of his or her injury. *Id.* Proximate cause has been defined as encompassing not only factual causation, i.e., that but-for the negligent action the result would not have occurred, but also amounting to a cause which is "so closely connected with the result and of such significance that the law is justified in imposing liability." *Francis v. United Bank*, 87 N.J. 15, 44 (1981) (quoting W. Prosser, Law of Torts § 41 at 238 (4th ed. 1971)); *see also Fluehr v. City of Cape May*, 159 N.J. 532, 543 (1999) ("Proximate cause has been described as a standard for limiting liability for the consequences of an act based upon mixed considerations of logic, common sense, justice, policy and precedent.") (internal quotations omitted). It is a basic principle of New Jersey law that "a tortfeasor should be liable for only the harm she actually caused to the plaintiff." *Komlodi v. Picciano*, 127 N.J. 387, 411 (2014)).

In that regard, New Jersey has adopted the affirmative defense of comparative negligence, which applies where a plaintiff is responsible, in whole or in part, for the injury suffered. *Id.; see also Ostrowski v. Azzara*, 111 N.J. 429, 438 (1988) (holding that "comparative negligence comes into action when the injured party's carelessness occurs before defendant's wrong has been committed or concurrently with it."). Under the common law doctrine of contributory negligence, a plaintiff was barred from recovery on a negligence claim if he or she was at fault, to any degree, for the harm at issue. *New Gold Equities Corp. v. Jaffe Spindler Co.*, 453 N.J. Super. 358, 380 (App. Div. 2018). In contrast, New Jersey's Comparative Negligence Act permits recovery if the plaintiff's negligence "was not greater than the negligence of the person against whom recovery is sought . . .." N.J.S.A. 2A:15-5.1. The statute further provides that, where recovery on a negligence claim is not precluded, a plaintiff's damages are diminished

by the percentage of negligence attributable to the plaintiff. *Id.*; *see also Erny v. Estate of Merola*, 171 N.J. 86, 97 (2002) ("The doctrine of comparative negligence considers those circumstances under which the plaintiff's contributory fault does not bar recovery, but does serve to reduce the damages he or she would otherwise be entitled to receive."). Thus, the Comparative Negligence Act serves to ameliorate the harshness of the contributory negligence doctrine while also limiting a defendant's exposure to liability. *New Gold Equities*, 453 N.J. Super. at 380; *see also Ostrowski*, 111 N.J. at 436. In short, "[u]nder the [comparative negligence] statute, if the plaintiff's negligence is fifty-one percent and defendant's forty-nine percent, the plaintiff receives no recovery." *Komlodi*, 127 N.J. at 412.

Here, relying on the doctrine of comparative negligence, Defendants argue they are entitled to summary judgment because no reasonable juror could find that Plaintiff was less than fifty percent negligent for the accident, thus absolving Defendants of liability as a matter of law. Defendants point to several key pieces of evidence they maintain demonstrate, without genuine dispute, that the accident was caused, in whole or in substantial part, by the careless actions of Plaintiff. First, they note Plaintiff admitted, in deposition testimony, that a vehicle in the onramp lane has a duty to yield to traffic in a roadway's lane of travel. Second, they emphasize Plaintiff also admitted he did not see Defendants' tractor trailer, traveling at a speed of approximately 60 miles per hour, approaching along the Turnpike's right lane as Plaintiff attempted to merge onto the Turnpike. Third, Defendants stress that in both his answers to interrogatories and deposition testimony, Plaintiff stated his vehicle was traveling at about 40 miles per hour, a speed they contend was too slow to enter the Turnpike's right lane, as confirmed by the traffic citation issued by the Trooper responding to the scene of the accident. Defendants maintain the foregoing

9

uncontroverted evidence demonstrates Plaintiff failed to make proper observations before merging onto the mainline of the Turnpike, failed to yield to the Defendants' tractor trailer traveling in the Turnpike's right lane, and failed to maintain an appropriate speed as his dump truck entered the right lane of travel from the merge lane. Based on these facts, Defendants contend, "it is clear that Plaintiff's negligence exceeded any negligence attributable to Defendant Kazak" and no reasonable jury could conclude otherwise. (Def. Reply at 14.)

Defendants' argument implicates two questions: whether Plaintiff himself failed to act with due care and, if so, to what extent his negligence was a proximate cause of the accident. Because comparative negligence is an affirmative defense, the burden is on Defendants to establish that the evidence is sufficiently one-sided on both questions that a reasonable factfinder could not find Plaintiff less than fifty percent at fault. *Cruz-Mendez v. ISU/Ins. Svcs. of San Francisco*, 156 N.J. 556, 577 (1999). It is well-recognized that the question of proximate cause should ordinarily be determined by the factfinder. *Fluehr*, 159 N.J. at 543. However, the New Jersey Supreme Court has recognized that "proximate cause as an issue . . . may be removed from the factfinder in the *highly extraordinary case* in which reasonable minds could not differ on whether that issue has been established." *Id.* (emphasis added). This principle equally applies to evaluating whether summary judgment is warranted in a defendant's favor based on the doctrine of comparative negligence, that is, where the "evidence of the plaintiff's negligence is sufficiently strong to forbid a rational factfinder from concluding the plaintiff's negligence did not exceed the defendant's negligence." *Vega by Muniz v. Piedilato*, 154 N.J. 496, 529 (1998) (Handler, J., concurring).

In this case, crucial facts concerning the extent, if any, to which Plaintiff may have been at fault are in dispute. Plaintiff contests Defendants' version of events, asserting the accident occurred after he had safely entered the right lane and traveled hundreds of yards. He states he observed his surroundings as he was preparing to merge and did not see any other vehicle for about a quarter mile. He further asserts he determined he could enter the roadway, activated the dump truck's signal lights to indicate his intention to merge, and completed the merge without incident. According to Plaintiff, it was only after he was proceeding along the Turnpike that he was struck from behind by Defendants' tractor trailer as it was attempting to change lanes.[3]

The Court recognizes Plaintiff has not provided an affidavit in support of the facts he proffers in opposition to Defendants' motion for summary judgment, as required by Rule 56(c)(1)(A).[4] Nearly all of Plaintiff's factual assertions are set forth in the statement he submits with his motion papers. During his deposition, Plaintiff appears to have testified that he was traveling at more than forty miles per hour before the accident and that he "was already [on] the Turnpike in the right lane" when the collision occurred. (Lorenzo-Noda Dep. Tr. 106:8 – 107:16, attached to Connell Cert. as Ex. D.) In any event, to defeat summary judgment, a nonmoving party need not produce evidence in a form admissible at trial. *Celotex*, 477 U.S. at 327. Rather, at

---

[3] While the Court can and does consider Plaintiff's materially different version of the events leading to the collision, Plaintiff's assertion about the *reason* Defendants' tractor trailer was changing lanes—expressly disputed by Defendants—amounts to mere speculation and thus does not factor into the Court's analysis on this motion for summary judgment.

[4] That Rule provides, in relevant part: "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

the summary judgment stage, the Court may consider evidence produced by the nonmovant so long as it could later be presented as admissible evidence at trial. *J.F. Freeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990); *see also Williams v. Borough of West Chester*, 891 F.2d a458, 466 n.12 (3d Cir. 1989) (noting Rule 56 requires the nonmovant to produce evidence "as would be admissible at trial . . . and thus reduce[ible] to admissible evidence.'"). In this case, Plaintiff's evidence at trial will necessarily include his direct testimony regarding the accident, and thus the Court may properly consider his narrative concerning the event at issue.

Moreover, because Plaintiff is a pro se litigant, the Court is obligated to construe his submissions liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Third Circuit has directed that the Court "must apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir.2004). Consistent with this obligation, courts in this district evaluating a Rule 56 motion for summary judgment in a case involving a pro se litigant search the record and the parties' submissions to determine whether there are genuine factual disputes. *Fahnbulleh v. Steneck*, No. 15-5075(ES), 2018 WL 1610692, at *2 (D.N.J. Apr. 3, 2018) (searching record and parties' submissions, in light of plaintiff's pro se status, to determine whether a genuine issue of material fact was raised); *Oguguo v. Wells Fargo Bank, NA*, No. 14-2383(SRC), 2016 WL 3041853, at *1 n. 3 (D.N.J. May 27, 2016) (noting "district court judges often relax procedural rules for unrepresented litigant" and "draw relevant facts from the record").

Defendants contend Plaintiff's account of the accident on this motion lacks support or conflicts with other evidence in the record.[5] They maintain that, when examined carefully and in light of the record as a whole, Plaintiff's version of the accident does not substantially differ from Defendants'. In particular, they emphasize Plaintiff's admission that he did not see the tractor trailer until after the accident occurred demonstrates he failed to yield to the tractor trailer as required by law. Defendants' argument, however, elides Plaintiff's assertions, to which he would presumably testify at trial, that he made proper observations, did not see the tractor trailer in the right lane of travel, entered the roadway upon determining it was clear, and traveled some distance before the tractor trailer struck his vehicle from behind while changing lanes. On this motion for summary judgment, the Court cannot disregard Plaintiff's account and must view all evidence, including Plaintiff's proffered testimony, in the light most favorable to the party opposing summary judgment. *Tolan*, 134 S. Ct. at 1866.

The foregoing analysis may suggest Defendants have relied exclusively on the two drivers' versions of the accident to argue that summary judgment in their favor is warranted. They have not. Their motion also proffers the crash investigation report and the settlement of Defendants' property damage claim as proof that Plaintiff was at least if not more than fifty percent at fault for the accident. Taken together, Defendants argue, the evidence overwhelmingly

---

[5] Defendants also urge the Court to strike from the record certain of Plaintiff's exhibits for his alleged failure to produce them during discovery, specifically (i) pages two through four of Exhibit C (records containing GPS data for Plaintiff's dump truck that also list the speed at which it was allegedly traveling at various times); and (ii) all of Exhibit H (a collection of eight photos of the area where the accident happened). However, the Court need not resolve that request to strike at this time, as the Court's decision on these cross-motions for summary judgment is not based, even in part, on those documents. Should Plaintiff wish to rely on them at trial, Defendants may file a motion in limine to preclude this evidence.

establishes that they could not, as a matter of law, be liable on Plaintiff's negligence claim. However, Defendants miss the mark, as neither the crash report nor the settlement constitute evidence the Court may consider in evaluating their motion for summary judgment.

The report prepared by the Trooper who responded to the accident, which concluded that the accident was caused by Plaintiff's failure to yield and slow driving speed, is unavailing for two reasons. First, while the report purports to be based on the Trooper's interviews with the drivers, Plaintiff disputes its contents, conclusions, and all statements attributed to him. Second, and more important, the report constitutes inadmissible hearsay and thus is not evidence the Court may consider on a motion for summary judgment. *See* Fed. R. Evid 802; *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). Even if the Court took notice of the report's contents, the facts it proffers are not based on the Trooper's first-hand observations. To the extent the report is based on the Trooper's interview with Plaintiff, its reliability is questionable, as the interview was filtered through the lay interpretation of Plaintiff's co-worker, about whose ability to accurately interpret Plaintiff's statements the record is empty. Thus, the report would not help Defendants carry their burden to show Plaintiff was more than fifty percent responsible for the accident and, therefore, unable to prevail on his negligence claim.[6]

Defendants' reliance in support of their summary judgment motion on the settlement of their counterclaim and third-party claim to recover for damage to their tractor trailer in the

---

[6] Additionally, the Court notes that the East Brunswick Township Municipal Court dismissed the summons the Trooper issued to Plaintiff for driving at a speed obstructing traffic, casting a longer shadow over the reliability of the report's contents and conclusions.

accident is also misplaced. Defendants note they settled for $35,000 their property damage claim against both Plaintiff and his employer at the time of the accident, third-party defendant H&O Trucking. Defendants assert the settlement payment represents 62% of the value of the damage to their tractor trailer and argue the payment "clearly establishes that Plaintiff's employer and insurance carrier determined Plaintiff was more than fifty (50) percent negligent" concerning the collision. (Def. Reply at 13.) To the contrary, the settlement proves only that H&O Trucking and/or its insurer elected to resolve rather than litigate the property damage claims. Moreover, Defendants' reliance on the settlement contravenes Federal Rule of Evidence 408, which prohibits using an agreement to compromise a claim for valuable consideration as evidence "on behalf of any party, when offered to prove liability for . . .  a claim that was disputed as to validity or amount . . . ." Fed. R. Evid. 408. Settlement of the property damage claim asserted by Defendants proves neither H&O Trucking's nor Plaintiff's legal responsibility for the accident. *Cf. Affiliated Mfrs. v. Aluminum Co. of Am.,* 56 F.3d 521, 526, 528 (3d Cir. 1995) (holding Rule 408's evidentiary exclusion for compromise and offers to compromise "is limited to evidence concerning settlement or compromise of a claim, where the evidence is offered to establish liability, or the validity or amount of the claim."). It is not competent evidence, on this motion for summary judgment, of the share of negligence, if any, which may be apportioned to Plaintiff. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Brother Int'l Corp.*, No. 06-2759 (FLW), 2007 WL 2571960, at *17-18 (D.N.J. Aug. 31, 2007) (granting, on a motion for summary judgment, the plaintiff's motion to strike from the defendant's opposition and cross-motion all references to settlement communications discussed or referred to therein, as prohibited under Rule 408).

In sum, the core of the factual record before the Court consists of the competing testimony of the two drivers involved in the collision, Plaintiff and Kazak. Given their conflicting versions of how the accident occurred, attempting to determine the quanta of those parties' relative negligence or the proximate cause of the accident necessarily requires the Court to weigh the evidence and make credibility determinations, a process forbidden when deciding a motion for summary judgment. *Marino*, 358 F.3d at 247 ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'") (quoting *Anderson*, 477 U.S. at 255). On this record, the Court cannot conclude the evidence is so one-sided as to both negligence and causation that no reasonable jury could find in favor of Plaintiff on his claim. Defendants, in other words, have not carried their burden under Rule 56 to demonstrate no genuine issue of fact as to Plaintiff's ability to recover under the controlling comparative negligence principles or otherwise. Therefore, their motion for summary judgment is denied.

Plaintiff's cross-motion for summary judgment must also be denied. Unlike the relatively lighter burden of opposing Defendant's motion for summary judgment, Plaintiff's obligation on his own motion for relief under Rule 56 is not satisfied merely by pointing to the existence of disputed material facts. Rather, because he bears the burden of proof on his negligence claim, he must affirmatively establish that on the facts of record, a reasonable juror would necessarily find each element of the claim satisfied. Plaintiff's cross-motion does not satisfy that standard. The disputed issues, as discussed above, preclude summary judgment in his favor.

**III.**    **CONCLUSION**

Defendants' motion and Plaintiff's cross-motion for summary judgment will be denied

for failure to satisfy the standard under Rule 56(a). A separate Order will be filed together with

this Opinion.

　　　　　　　　　　　　　　　 /s/ *André M. Espinosa*　　　　
　　　　　　　　　　　　　　ANDRÉ M. ESPINOSA
　　　　　　　　　　　　　　United States Magistrate Judge

Dated:  January 27, 2022

17